An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-560
NORTH CAROLINA COURT OF APPEALS

Filed: 18 November 2014

STATE OF NORTH CAROLINA

v.                                      Rockingham County
                                        No. 12 CRS 053123, 053125
JOSEPH WOODROW TURNER


Appeal by defendant from judgments entered 1 October 2013 by Judge L. Todd Burke in Rockingham County Superior Court. Heard in the Court of Appeals 22 October 2014.

> *Roy Cooper, Attorney General, by Yvonne B. Ricci, Assistant Attorney General, for the State.*

> *Law Offices of John R. Mills, by John R. Mills for defendant-appellant.*


STEELMAN, Judge.


Defendant failed to demonstrate that evidence admitted at trial was prejudicial. As such, the admission of this evidence did not rise to the level of plain error. Where the defendant's intoxicated and disruptive conduct occurred in the front yard of a private residence, the trial court erred in not dismissing this charge.

## I. Factual and Procedural Background

On 17 September 2012, Elsie Turner (Ms. Turner) was attacked in the front yard of the residence she shared with her son, Jamie Turner. Both of her sons, Jamie Turner (Jamie) and Joseph Turner (defendant) were present when the attack occurred. Jamie and defendant had been drinking that day. The assailant had knocked Ms. Turner to the ground and repeatedly struck her about the head. A passerby notified authorities of the attack.

Steven Hunter (Hunter), a parole officer, was the first to arrive at Ms. Turner's home. Jamie and defendant were in the front yard, and defendant was standing over Ms. Turner. Hunter did not witness the assault, but testified that defendant's hands were red. Defendant asserted that he had been checking Ms. Turner for injuries.

Officer John Deane (Officer Deane) spoke with Ms. Turner at her residence. At that time, she said that she was unsure of whether Jamie had attacked her, but she was certain that defendant did not attack her. Ms. Turner had serious brain injuries and was treated overnight at a hospital for brain hemorrhages. At trial, she testified that defendant hit her in the jaw and repeatedly kicked her in the head.

As Hunter entered the property, defendant approached Hunter, pointing and clenching his fist. Hunter told defendant to stop. Defendant then repeatedly called Hunter a "nigger" and swore at him, telling Hunter to get off the property. When defendant repeatedly ignored Hunter's instructions to desist, Hunter pepper sprayed defendant.

Defendant then went inside the residence, into the kitchen, and used water to clean the pepper spray from his eyes. Officers misunderstood his statement, that "I am cleaning my eyes," to be "cleaning my knives," and arrested defendant. Defendant resisted being handcuffed. During the arrest, officers smelled alcohol on his breath.

Defendant was taken outside and placed in a lawn chair. While outside, he informed officers he was a member of the Ku Klux Klan. He remained uncooperative when paramedics attempted to treat him for a cut he had received during the arrest.

Defendant was charged with assault with a deadly weapon with intent to kill inflicting serious injury with respect to Ms. Turner, intoxicated and disruptive conduct with respect to his use of loud and profane language during his arrest, and resisting a public officer.[1] He was found guilty on all three

---

[1] Defendant was also charged with interfering with emergency

charges by the jury.  Defendant was sentenced to an active term of 110-144 months imprisonment on the assault charge, 20 days imprisonment on the intoxicated and disruptive charge, and 60 days imprisonment on the resisting a public officer charge, to be served consecutively.

Defendant appeals.

## II. Plain Error

In his first, second, and third arguments, defendant contends that the trial court committed plain error (1) in permitting the State to ask defendant whether he was calling the State's witness a liar; (2) in admitting Detective Webb's testimony that defendant refused to speak while in custody; and (3) in admitting evidence of defendant's use of racial epithets and references to his membership in the Klan.  We disagree.

## A. Standard of Review

We review "unpreserved issues for plain error when they involve either (1) errors in the judge's instructions to the jury, or (2) rulings on the admissibility of evidence." *State v. Gregory*, 342 N.C. 580, 584, 467 S.E.2d 28, 31 (1996).

> [T]he plain error rule ... is always to be applied cautiously and only in the exceptional case where, after reviewing the

---

communication.  At the close of the State's evidence, the court dismissed this charge.

> entire record, it can be said the claimed error is a "*fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done," or "where [the error] is grave error which amounts to a denial of a fundamental right of the accused," or the error has "'resulted in a miscarriage of justice or in the denial to appellant of a fair trial'" or where the error is such as to "seriously affect the fairness, integrity or public reputation of judicial proceedings" or where it can be fairly said "the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."

*State v. Lawrence*, 365 N.C. 506, 516-17, 723 S.E.2d 326, 333 (2012) (quoting *State v. Odom,* 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983)).

### B. State's Cross-Examination of Defendant

First, defendant contends that the trial court committed plain error by permitting the State to ask defendant whether the State's witness was a liar. Specifically, defendant testified that his brother, not defendant, was the assailant. The State then asked defendant about the testimony of Hunter: "Now, this – this gentleman, with all his training and experience as a police officer and probation officer, was he lying?" The State later asked about Hunter again: "We've got a probation officer who testified, former Greensboro police officer who said you were advancing toward him in an aggressive manner. That's a lie,

right?" The State also asked defendant, with regard to the testimony of Sgt. Earles, an officer who examined Jamie's knife: "Do you know why that – so when Sgt. Earles was testifying there was no blood on that knife, he was lying, too, wasn't he?" At no point did defendant object to these questions, and our review is limited to plain error.

We have held that it is highly improper to ask a witness whether another witness is lying. *State v. Campbell*, 30 N.C. App. 652, 656, 228 S.E.2d 52, 55 (1976). We held, in *Campbell*, that it is for the jury, not another witness, to determine the credibility of witnesses. *Id.*

Defendant compares this case with that of *State v. Locklear*, 294 N.C. 210, 241 S.E.2d 65 (1978), in which the prosecutor accused a defense witness of perjury. In that case, our Supreme Court held that such an accusation was grossly improper, and granted a new trial. However, in the instant case, the State did not accuse defendant of lying; rather, it asked defendant, rhetorically, to compare his testimony with conflicting testimony from other witnesses.

Even assuming *arguendo* that the State's inquiries were improper, however, defendant has presented no argument that suggests that, absent these questions, the jury would probably

have reached a different verdict. Even absent the State's active contrast of defendant's testimony with that of Hunter and Sgt. Earles, the jury heard and was able to rely upon the testimony of all three witnesses. We hold that defendant has not shown that these questions prejudiced his case. The trial court did not commit plain error.

This argument is without merit.

### C. Commenting on the Right to Remain Silent

Second, defendant contends that the trial court committed plain error in permitting Detective Webb to testify concerning defendant's exercise of his right to remain silent.

At trial, Detective Webb testified:

> After the initial visit, I did leave the hospital, come back to Rockingham County, stopped at the crime scene and then I proceeded to the sheriff's office.
>
> I went back into the jail area to speak with Mr. Turner. I always like to give them the option if they would like to give a statement, or if they would like to provide additional information, check on his well-being.
>
> I did step back over to the jail to see if everything was okay back there. Mr. Turner did not wish to speak with me at that point in time.

Defendant did not object to this testimony at trial. On appeal, defendant contends that this testimony was an improper

comment on defendant's exercise of his right to remain silent, and that the trial court committed plain error in admitting it.

A defendant's post-arrest silence is inadmissible as substantive evidence. *Doyle v. Ohio*, 426 U.S. 610, 619, 49 L.Ed.2d 91, 98 (1976); *State v. Mendoza*, 206 N.C. App. 391, 395, 698 S.E.2d 170, 174 (2010). The bar on admitting such evidence includes any comment on a defendant's silence. *State v. Ward*, 354 N.C. 231, 266, 555 S.E.2d 251, 273 (2001).

Even assuming *arguendo* that the admission of this testimony was an improper remark on defendant's silence, defendant has failed to show that this prejudiced his case before the jury. Defendant's bare contention that "[t]he jury likely viewed [defendant]'s refusal to talk to Detective Webb as evidence that he was guilty" is insufficient, when contrasted with the eyewitness testimony of officers and those present during the assault, to rise to the level of prejudice necessary to establish plain error. We hold that the trial court did not commit plain error in admitting Detective Webb's testimony.

This argument is without merit.

### D. Evidence of Racial Epithets and Klan Membership

Third, defendant contends that the trial court committed plain error in admitting into evidence testimony concerning

statements made by defendant during his arrest, consisting of racial epithets and his assertion of Klan membership.

At trial, Hunter testified about defendant's use of racial epithets during his arrest. An officer testified that, during his arrest, defendant stated that he was a member of the Ku Klux Klan. Defendant contends that these facts were not relevant to the case before the jury, and "evoked some of the most incendiary issues in our State's history." Defendant failed to object to this testimony at trial, and contends on appeal that the trial court committed plain error in admitting it.

Irrelevant evidence is not admissible. N.C. R. Evid. 402. Even if evidence is relevant, it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. N.C. R. Evid. 403. Defendant contends that his use of racial epithets and membership in the Klan is not relevant, and that even if it were relevant, the danger of unfair prejudice substantially outweighs any probative value of the comments made during his arrest.

Even assuming *arguendo* that the trial court erred in admitting this testimony, however, defendant has once again failed to show prejudice. The evidence at trial shows that defendant was present during the assault of his mother, and that

defendant swore at officers and resisted arrest. Even in the absence of the statements at issue, there was ample evidence from which the jury could determine defendant's guilt. We hold that the trial court did not commit plain error in admitting these statements.

This argument is without merit.

## II. Intoxicated and Disruptive Conduct

In his fourth argument, defendant contends that the trial court erred in denying his motion to dismiss the charge of intoxicated and disruptive conduct. We agree.

## A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo*." *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007).

"'Upon defendant's motion for dismissal, the question for the Court is whether there is substantial evidence (1) of each essential element of the offense charged, or of a lesser offense included therein, and (2) of defendant's being the perpetrator of such offense. If so, the motion is properly denied.'" *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455 (quoting *State v. Barnes*, 334 N.C. 67, 75, 430 S.E.2d 914, 918 (1993)), *cert. denied*, 531 U.S. 890, 148 L. Ed. 2d 150 (2000).

## B. Analysis

Defendant contends that the trial court should have granted his motion to dismiss the charge of intoxicated and disruptive conduct, due to the fact that the location of the alleged offenses was not a public place.

N.C. Gen. Stat. § 14-444, under which defendant was sentenced, provides in relevant part:

> (a) It shall be unlawful for any person *in a public place* to be intoxicated and disruptive in any of the following ways:
>
> . . .
>
> (3) Grabbing, shoving, pushing or fighting others or challenging others to fight, or
>
> (4) Cursing or shouting at or otherwise rudely insulting others[.]

N.C. Gen. Stat. § 14-444(a) (2013) (emphasis added).

A public place is defined to be "[a]ny location that the local, state, or national government maintains for the use of the public, such as a highway, park, or public building." Black's Law Dictionary 1351 (9th Ed. 2009). We have previously held that an altercation which took place in the front yard of a group home for juveniles was private property, and that the trial court in that case erred in denying a motion to dismiss. *In re May*, 153 N.C. App. 299, 303, 569 S.E.2d 704, 708 (2002).

In the instant case, as in *May*, all interactions between defendant and police officers occurred in the front yard of a private residence. We hold that this was not a location "that the . . . government maintains for the use of the public," and that it was not a public place. Accordingly, the State failed to demonstrate that defendant's conduct occurred in a public place, and the trial court erred in denying defendant's motion to dismiss the charge of intoxicated and disruptive conduct. We reverse the trial court's judgment on that charge.

NO ERROR IN PART, REVERSED IN PART.

Judges CALABRIA and McCULLOUGH concur.

Report per Rule 30(e).